1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   MALCOM BURBANK,

8                          Plaintiff,              NO:  2:14-CV-292-RMP

        v.                                         ORDER GRANTING MOTION TO
9                                                  DISMISS

10  JEH JOHNSON, Secretary,
    Department of Homeland Security;
11  JEAN THARPE, Field Office Director,
    Vermont Field Office, US Citizenship
    and Immigration Services; LEON
12  RODRIGUEZ, Director, US
    Citizenship and Immigration Services;
13  ERIC H. HOLDER, JR., US Attorney
    General, US Department of Justice,
14
                           Defendants.
15

16         Before the Court is Defendants' Motion to Dismiss, ECF No. 14.  The Court

17  heard oral argument on May 13, 2015.  Defendants were represented by Katherine

18  J. Shinners.  Devin T. Theriot-Orr appeared on behalf of Plaintiff Malcolm

19  Burbank.

20

ORDER GRANTING MOTION TO DISMISS ~ 1

With the Court's leave, the parties filed supplemental briefs discussing whether Mr. Burbank may petition the U.S. Court of Appeals for review of this matter.  ECF Nos. 18, 19.  The parties also submitted recent supplemental authority, which the Court has reviewed.  *See* ECF Nos. 20, 21, 22.

BACKGROUND

Mr. Burbank filed on behalf of his foreign spouse an I-130 immigrant visa petition, which Mr. Burbank explains is the first step in applying to become a Lawful Permanent Resident of the United States.  ECF No. 9 at 3.  The U.S. Citizenship and Immigration Services ("USCIS") denied Mr. Burbank's petition because in 1997 Mr. Burbank pleaded no contest to the charge of Attempted Lewd, Lascivious Acts with a Child under 16, in violation of Florida law.  ECF No. 9 at 3.

In the letter denying Mr. Burbank's petition, the USCIS explained that its decision was based on provisions of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), which amended the Immigration and Nationality Act ("INA").  ECF No. 9, Ex. 3 at 1.  The INA typically allows a United States citizen to classify his or her foreign national spouse as an immediate relative for the purpose of allowing the person to immigrate to the United States.  *See* 8 U.S.C. § 1154(a)(1)(A)(i).  The Adam Walsh Act, however, amended the INA to prohibit a United States citizen who has been convicted of any "specified offense against a minor" from filing a family-based visa petition on behalf of a

beneficiary "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien . . . ." *See* 8 U.S.C. § 1154(a)(1)(A)(viii).[1]

The USCIS found that Mr. Burbank's Florida conviction constituted a "specified offense against a minor" and that he therefore was "presumed to be ineligible to petition for family-based benefits." *See* ECF No. 9, Ex. 3 at 3. Furthermore, the USCIS wrote that to overcome the presumption of ineligibility, Mr. Burbank would need to "demonstrate, beyond any reasonable doubt, that [he] pose[d] no risk to the safety and well-being of the beneficiary or any dependent beneficiary." ECF No. 9, Ex. 3 at 5.

Mr. Burbank sued the director of the USCIS and other federal officials, alleging seven causes of action. ECF No. 9. First, Mr. Burbank claims that the USCIS's application of the Adam Walsh Act violates the Ex Post Facto Clause of the U.S. Constitution. Second, Mr. Burbank asserts that the USCIS violated his fundamental right to marry by denying his I-130 petition without a hearing or a right to appeal. Third, Mr. Burbank contends that the Adam Walsh Act constitutes an excessive penalty in violation of the Fifth and Eighth Amendments by banishing his wife from the country. Fourth, Mr. Burbank notes that the Adam Walsh Act prohibits certain citizens only from "filing" visa petitions, such that the USCIS

---

[1] Defendants assert and Mr. Burbank does not dispute that the Secretary of Homeland Security has delegated this authority to the USCIS. *See* ECF No. 14 at 3.

acted ultra vires by denying a properly filed petition on the basis of the act.  Fifth, Mr. Burbank alleges that the USCIS acted arbitrarily and capriciously by presuming that petitions affected by the Adam Walsh Act should be denied and that exceptions should be rare.  Sixth, the USCIS allegedly violated the Administrative Procedure Act ("APA") by implementing new legal standards without complying with the necessary notice and comment procedures.  Seventh, Mr. Burbank asserts that, even if the USCIS had complied with notice and comment procedures, the rules exceed the agency's legislative authority.

ANALYSIS

Defendants move to dismiss the Amended Complaint, arguing that the Secretary's finding that Mr. Burbank could pose a risk to the beneficiary is not reviewable, such that the Court lacks jurisdiction.  Defendants also argue that Mr. Burbank's allegations fail to state a claim upon which relief may be granted.

The Federal Rules of Civil Procedure allow for the dismissal of a complaint where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss brought pursuant to this rule "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing the sufficiency of a complaint, a court accepts all well-pleaded allegations as true and construes those allegations in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008)).

To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While specific legal theories need not be pleaded, the pleadings must put the opposing party on notice of the claim. *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is not required to establish a probability of success on the merits; however, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### 1. Jurisdiction

Before turning to the arguments regarding Mr. Burbank's substantive claims, the Court considers whether it has jurisdiction to resolve this matter. Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Defendants argue that because the Adam Walsh Act commits the relevant issue to the USCIS's "sole and unreviewable discretion," 8 U.S.C. § 1154(a)(1)(A)(viii), the Court lacks jurisdiction to hear Mr. Burbank's concerns. *See* ECF No. 14 at 4-7.

There is a "'strong presumption that Congress intends judicial review of administrative action.'" *Helgeson v. Bureau of Indian Affairs, Dep't of Interior*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988)). The presumption may be overcome, however, "if there is 'clear and convincing evidence of a contrary congressional intent,' . . . or 'in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* (citing *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)) (internal quotation marks omitted).

Here, Mr. Burbank apparently does not dispute that Congress intended to shield from judicial review at least the discretionary no-risk determination under the Adam Walsh Act. *See* ECF No. 15 at 8 ("The 'sole, unreviewable discretion language applies only to defendants' 'no risk' determination and plaintiff does not challenge defendants' 'no risk' determination."). Section 1252(a)(2)(B) provides, in relevant part, that "[n]otwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney

General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ."  8 U.S.C. § 1252(a)(2)(B)(ii).  Congress's intent to preclude district courts from reviewing the no-risk decision is evident from the text placing it in "the Secretary's sole and unreviewable discretion . . . ."  *See* 8 U.S.C. § 1154(a)(1)(A)(viii).

Mr. Burbank argues, however, that Defendants' jurisdictional contentions are a red herring.  ECF No. 15 at 8-10.  Mr. Burbank explains that he does not challenge the USCIS's no-risk determination but rather "that he, a US citizen, is ineligible pursuant to the [Adam Walsh Act] to file a petition on behalf of his lawfully wed adult spouse."  ECF No. 15 at 8.  Thus, although Congress intended to preclude the no-risk determination itself from judicial review, the parties disagree about whether the Court has subject matter jurisdiction to consider Mr. Burbank's collateral challenges.

District courts that have considered this issue have come to different results. At least four courts have concluded that they lack subject matter jurisdiction to consider constitutional or statutory challenges brought in relation to the USCIS's discretionary no-risk determination.  *See Bittinger v. Johnson*, No. 1:14-CV-1560, 2015 WL 3842649, at *3-4 (M.D. Pa. June 22, 2015); *Gebhardt v. Johnson*, No. 14-0227-VAP, ECF No. 20 at 13-14 (C.D. Cal. May 11, 2015); *Bremer v. Johnson*,

No. 13-1226-CV-W-ODS, 2014 WL 7238064, at *3-4 (W.D. Mo. Dec. 17, 2014); *Beeman v. Napolitano*, No. CIV. 10-803-JO, 2011 WL 1897931, at *3-4 (D. Or. May 17, 2011).

Another court, however, recently found that the designation of the no-risk determination to the Secretary's "sole and unreviewable discretion" does not preclude courts from evaluating constitutional and procedural challenges that are similar to those arguments raised by Mr. Burbank.  *See Bakran v. Johnson*, No. 15-127-JP, 2015 WL 3631746, at *4 (E.D. Pa. June 11, 2015).  The *Bakran* court concluded that the complaint did "not question the Secretary's determination, in its 'sole and unreviewable discretion,' that [the plaintiff] had failed to prove that he posed no risk to his wife."  *Id.*  The plaintiff instead claimed "that [the USCIS's] non-discretionary threshold determination that he may not file an I-130 petition on his wife's behalf because he has been convicted of a 'specified offense against a minor' violated his constitutional rights" and that the USCIS violated the APA.  *Id.* The *Bakran* court concluded that these claims were not barred by the jurisdiction-stripping provision because they did not challenge the USCIS's no-risk determination.  *Id.*

The Court finds that *Bakran* is persuasive and consistent with the Supreme Court's opinion in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991). In *McNary*, the Court considered whether district courts had jurisdiction to review

constitutional and statutory challenges to an agency's administration of an amnesty program for special agricultural workers ("SAWs") that was created by the Immigration Reform and Control Act of 1986 ("Reform Act").  498 U.S. at 481, 483-84.  The Reform Act created a procedure for obtaining SAW status, which provided benefits including the possibility of becoming a lawful permanent resident.  *Id.* at 484.  The law "permitted 'judicial review of [a denial of SAW status] only in the judicial review of an order of exclusion or deportation.'"  *Id.* at 486 (quoting 8 U.S.C. § 1160(e)).  Because courts of appeal are the only judicial fora that review deportation orders, individuals could seek judicial redress only in appellate court and only if deportation proceedings had been started.  *Id.*

The Court held that the jurisdictional limitation "applie[d] only to review of denials of individual SAW applications[,]" not to challenges to agency policies and procedures.  *See id.* at 494.  In support, the Court explained that the relevant part of the Reform Act "describe[d] the provision as referring only to review 'of *a determination* respecting *an application*' for SAW status . . . ."  *Id.* at 491-92.

The Court also "note[d] that had Congress intended the limited review provisions . . . to encompass challenges to INS procedures and practices, it could easily have used broader statutory language."  *Id.* at 494.  For example, Congress could have "channel[ed] into the Reform Act's special review procedures 'all causes . . . arising under any of the provisions' of the legalization program" or

1   "refer[ed] to review 'on all questions of law and fact' under the SAW legalization

2   program." *Id.*

3        Here, Defendants contend that *McNary* is distinguishable because the

4   relevant statutory bar in this case is broader than the provision that was examined

5   in *McNary*.   ECF No. 16 at 3-4 n.1.   The statute in *McNary* precluded only

6   "judicial review of a determination respecting an application for adjustment of

7   status[,]" 498 U.S. at 491, while § 1252 more broadly proscribes judicial review of

8   any specified discretionary "decision or action[,]" *see* 8 U.S.C. § 1252(a)(2)(B)(ii).

9        However, Defendants overlook that § 1252 works in tandem with the

10  description of the relevant discretionary decision in the Adam Walsh Act.  While

11  § 1252 bars judicial review of *all* decisions of the Attorney General or the

12  Secretary of Homeland Security that have been delegated to the discretion of those

13  officials in the applicable subchapter, § 1154 identifies the particular discretionary

14  decision that is relevant to this case.  Namely, that is the "determin[ation] that the

15  citizen poses no risk to the alien . . . ." *See* 8 U.S.C. § 1154(a)(1)(A)(viii).

16       Focusing on the correct discretionary decision that is at issue, the Court finds

17  that *McNary* supports the conclusion that the Court has subject matter jurisdiction

18  to consider Mr. Burbank's claims.  This case does not concern a challenge to the

19  discretionary decision of whether Mr. Burbank poses no risk to his wife or to any

20  dependent beneficiary.  Rather, like the SAW applicants in *McNary*, Mr. Burbank

1    contends that the process that the USCIS followed contravened the law.  Because

2    only the no-risk determination was committed to the USCIS's unreviewable

3    discretion, the Court finds that it has subject matter jurisdiction to consider Mr.

4    Burbank's constitutional and statutory claims, which are distinct from the

5    discretionary decision.[2]

6         The Court also notes that, unless subject matter jurisdiction exists in this

7    forum, Congress essentially would have precluded *any* judicial review of the

8    USCIS's procedure for applying the no-risk determination.  In coming to the

9    conclusion that it lacked subject matter jurisdiction, another district court relied in

10   part on the understanding that, unlike the *McNary* scheme, "the statutory scheme

11   found in § 1252(a)(2) does address judicial review of legal and constitutional

12   claims, stating that these types of claims should be reviewed in the appropriate

13   court of appeals." *Bremer*, 2014 WL 7238064, at *4.

14        During oral argument on this motion, the Court requested the parties to

15   submit supplemental briefing regarding whether Mr. Burbank could petition the

16   Ninth Circuit Court of Appeals for review pursuant to 8 U.S.C. § 1252(a)(2)(D).[3]

---

[2] The Court acknowledges that this analysis conflicts with the Western District of Missouri's discussion in *Bremer*. *See* 2014 WL 7238064, at *3-4 ("The review scheme found in § 1252(a)(2) does not focus only on individual determinations, rather it relates to 'any other decision or action.'").

[3] This provision states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be

ORDER GRANTING MOTION TO DISMISS ~ 11

Both parties found that such review is unavailable because § 1252 applies only to judicial review of orders of removal.  ECF Nos. 18, 19.  After conducting independent research, the Court agrees that § 1252 would not permit Mr. Burbank to petition the Ninth Circuit for review.  *See Green v. Napolitano*, 627 F.3d 1341, 1346 (10th Cir. 2010) (concluding that the district court lacked jurisdiction to consider revocation of I-130 application in part because "§ 1252(a)(2)(D) allows judicial review over constitutional and legal challenges only when raised on appeal of a final order of removal") (internal quotation marks omitted).

Thus, if the Court found that it lacked subject matter jurisdiction, it appears that Congress would have left Mr. Burbank and other sponsors of I-130 visa applicants with no means of judicial redress.  Considering the "presumption favoring interpretations of statutes that allow judicial review of administrative action" and the fact that only the no-risk determination was designated to the USCIS's discretion, "it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review."  *See McNary*, 498 U.S. at 496.[4]

---

construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).

[4] The possibility that Mr. Burbank could seek review of a "colorable constitutional violation" even if his claims otherwise were unreviewable does not undermine the Court's decision.  *See Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010).  As discussed above, case law and the text of the jurisdictional bar do not support the conclusion that Congress intended to preclude litigation of collateral constitutional and statutory issues that arise in the context of I-130 visa

1    In sum, like the judicial review provision examined in *McNary*, the statutes

2    limiting review of the USCIS's no-risk determination do not apply to Mr.

3    Burbank's statutory and constitutional arguments.    The Court turns to Mr.

4    Burbank's substantive claims.

5        2.    *Ex Post Facto Clause and Retroactivity*

6        Mr. Burbank contends that because the Adam Walsh Act was enacted after

7    his conviction had occurred, denying his I-130 petition on the basis of the act

8    violates the Ex Post Facto Clause and retroactively imposes an additional penalty

9    for his crime.  ECF No. 9 at 12-16.

10        "Article I contains two Ex Post Facto Clauses, one directed to Congress (§ 9,

11   cl. 3), the other to the States (§ 10, cl. 1)."  *Landgraf v. USI Film Prods.*, 511 U.S.

12   244, 266 n.19 (1994) (italics omitted).  The Supreme Court has interpreted both

13   clauses as applicable only to penal legislation.  *Id.*

14        The parties dispute whether the applicable provision of the Adam Walsh Act

15   is punitive in nature, such that it would be subject to the Ex Post Facto Clause.  *See*

16   ECF No. 14 at 16-19.  To determine whether legislation is penal, the Court "must

17   'ascertain whether the legislature meant the statute to establish "civil"

18   proceedings.'"    *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *Kansas v.*

19   *Hendricks*, 521 U.S. 346, 361 (1997)).  If the legislature meant to impose a civil

20   applications, regardless of whether the Ninth Circuit recognizes a limited exception for colorable
     violations of the Constitution.

ORDER GRANTING MOTION TO DISMISS ~ 13

1    and nonpunitive regulatory scheme, the Court still must consider "whether the

2    statutory scheme is 'so punitive either in purpose or effect as to negate [the

3    legislature's] intention' to deem it 'civil.'"    *Id.* (quoting *Hendricks*, 521 U.S. at

4    361) (internal quotation marks omitted).    Because of the Court's deference to

5    legislative intent, however, "only the clearest proof" will establish that a civil

6    remedy truly is a criminal penalty.    *Id.* (internal quotation marks omitted).

7         Here, Defendants have established that the relevant provision of the Adam

8    Walsh Act is a civil matter rather than a criminal penalty.    Like in *Smith*, which

9    concerned a state sex offender registry, the legislature that adopted the Adam

10   Walsh Act stated that its purpose was to enact a sex offender registration system to

11   protect the public.    *See Smith*, 538 U.S. at 93; 42 U.S.C. § 16901.    Mr. Burbank

12   offers no persuasive authority to indicate that, despite Congress's expressed intent,

13   the relevant provision of the Adam Walsh Act is punitive in nature.    Accordingly,

14   the Court finds that the act is civil rather than punitive.[5]

15

16   [5] For similar reasons, Mr. Burbank has failed to assert a valid claim that the Adam Walsh Act
     imposes an excessive punishment in violation of the Eighth Amendment.    "Punishment," for
     purposes of the Eighth Amendment, includes "'a civil sanction that cannot fairly be said solely to
17   serve a remedial purpose, but rather can only be explained as also serving either retributive or
     deterrent purposes . . . .'"    *Austin v. United States*, 509 U.S. 602, 610 (1993) (quoting *United
     States v. Halper*, 490 U.S. 435, 448 (1989)).    As discussed in regard to the Ex Post Facto Clause,
18   the purpose of the no-risk determination in the Adam Walsh Act is to protect the public, not to
     punish convicted sex offenders.    Although, as Mr. Burbank argues, the provision will not ensure
19   that immigrants are shielded from convicted sex offenders, the law at least reduces the likelihood
     that beneficiaries will depend upon convicted offenders to maintain their residence in this
20   country.    Mr. Burbank has not alleged sufficient facts to support his allegation that the provision
     also serves a retributive or deterrent purpose.

ORDER GRANTING MOTION TO DISMISS ~ 14

Although the Ex Post Facto Clause applies only to penal legislation, "the presumption against retroactive legislation is deeply rooted in our jurisprudence," and can be found in multiple provisions of the Constitution. *See Landgraf*, 511 U.S. at 265-66. Here, Mr. Burbank argues that the Supreme Court already addressed this exact retroactivity case in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012). ECF No. 15 at 12.

*Vartelas* concerns a lawful permanent resident from Greece who pleaded guilty to a felony in 1994. 132 S. Ct. at 1483. At the time of Vartelas's conviction, an alien with his residency status could leave the United States for a short trip without being required to meet "entry" requirements upon his or her return. *See id.* at 1484. Congress later enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which provided in relevant part that a lawful permanent resident who had been convicted of a crime involving moral turpitude could be deemed inadmissible upon his or her return from a brief trip abroad. *See id.* at 1485. Vartelas briefly visited his parents in his home country, and after his return he eventually was ordered removed to Greece because of his 1994 conviction. *Id.* at 1485-86.

The Supreme Court held, however, that it would violate the antiretroactivity principle to impose the new law based on Vartelas's old conviction. *See id.* at 1487. "Neither his sentence, nor the immigration law in effect when he was

1  convicted and sentenced, blocked him from occasional visits to his parents in

2  Greece.  Current § 1101(a)(13)(C)(v), if applied to him, would thus attach 'a new

3  disability' to conduct over and done well before the provision's enactment." *Id.*

4      Mr. Burbank argues that Defendants similarly are attempting to impose a

5  new disability on his conviction, which occurred years before Congress enacted the

6  Adam Walsh Act.   However, the *Vartelas* Court distinguished the IIRIRA

7  provision from other laws that do not operate retroactively but instead "address

8  dangers that arise postenactment:  sex offenders with a history of child molestation

9  working in close proximity to children, and mentally unstable persons purchasing

10 guns." *Id.* at 1489 n.7.  Unlike the restrictions in those laws, "[t]he act of flying to

11 Greece . . . does not render a lawful permanent resident like Vartelas hazardous.

12 Nor is it plausible that Congress' solution to the problem of dangerous lawful

13 permanent residents would be to pass a law that would deter such persons from

14 ever leaving the United States." *Id.*

15     Here, the Court finds that the Adam Walsh Act provision regarding a no-risk

16 determination is not a retroactive disability that attached to Mr. Burbank's prior

17 conviction; rather, the act protects aliens from convicted sex offenders and

18 provides a means for the Secretary to override that protection when appropriate.

19 The Court concludes that Mr. Burbank has not stated a plausible claim that the law

20

requiring a no-risk determination violates the Ex Post Facto Clause or that the law contravenes the antiretroactivity principle.

    *3.    Due Process Clause*

    Mr. Burbank next contends that the USCIS violated his rights under the Due Process Clause of the Fifth Amendment by denying his I-130 petition.  ECF No. 9 at 16-19.  Mr. Burbank asserts violations of both his substantive and procedural due process rights.

    Mr. Burbank's arguments regarding substantive due process rights lack merit.  Mr. Burbank claims that the Adam Walsh Act contravenes his "fundamental right to marry and live with his spouse as husband and wife."  ECF No. 9 at 17.  As Defendants note, it is undisputed that Mr. Burbank *has* married his wife, such that Defendants have not violated any fundamental right to marry.  *See* ECF No. 14 at 22; *see also Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010) ("[L]awfully denying Morales adjustment of status does not violate any of his or his family's substantive rights protected by the Due Process Clause.").

    Mr. Burbank also claims that Defendants violated his procedural due process rights by denying the I-130 petition without at least "a hearing before a neutral and detached trier of fact, after notice of the hearing to the Plaintiffs, and the right to appeal."  ECF No. 9 at 18.  Mr. Burbank relies on the Ninth Circuit's conclusion

1    that "[i]mmediate relative status for an alien spouse is a right to which citizen

2    applicants are entitled as long as the petitioner and spouse beneficiary meet the

3    statutory and regulatory requirements for eligibility.  This protected interest is

4    entitled to the protections of due process."  *Ching v. Mayorkas*, 725 F.3d 1149,

5    1156 (9th Cir. 2013).

6         However, "'[a] threshold requirement to a substantive or procedural due

7    process claim is the plaintiff's showing of a liberty or property interest protected

8    by the Constitution.'"  *Id.* at 1155 (quoting *Wedges/Ledges of Cal., Inc. v. City of*

9    *Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994)).  *Ching*, for example, concerned the

10   general rule that "[w]here a petitioner of an immediate relative petition proves that

11   his marriage meets the requirements for the approval of an I-130, he is entitled, as

12   a matter of right, to the approval of his petition."  *Id.* at 1155.

13        Mr. Burbank, because of his prior conviction, no longer benefits from the

14   general rule that an I-130 petition be approved as a matter of right.  Rather, the

15   Adam Walsh Act provides that Mr. Burbank may not file an I-130 petition *unless*

16   the Secretary determines, "in the Secretary's sole and unreviewable discretion,"

17   that Mr. Burbank poses no risk to the alien.  *See* 8 U.S.C. § 1154(a)(1)(A)(viii); *see*

18   *also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A]

19   benefit is not a protected entitlement if government officials may grant or deny it

20

in their discretion.").[6]  Because Mr. Burbank lacks a protected interest in obtaining

an I-130 visa for his wife, his procedural due process claim fails.

> 4.    *Ultra Vires Interpretation of the Adam Walsh Act*

Mr. Burbank next contends that the USCIS acted ultra vires by interpreting

the Adam Walsh Act to allow the agency to deny a filed petition based on the

Secretary's no-risk determination.  ECF No. 9 at 21-23.  Because the Adam Walsh

Act excludes persons from the general rule that "any citizen of the United States . .

. may *file* a petition[,]" Mr. Burbank contends that the act does not allow the

USCIS to deny a petition after it has been filed.  *See* 8 U.S.C. § 1154(a)(1)(A)(i)

(emphasis added).  In a similar vein, Mr. Burbank claims that the USCIS acted

ultra vires by applying the "beyond any reasonable doubt" standard, which is not

expressly allowed in the Adam Walsh Act.  ECF No. 9 at 28-31.

When evaluating an agency's construction of a statute that it administers, the

Court follows the two-step procedure described in *Chevron, U.S.A., Inc. v. Natural

Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  "First, always, is the question

---

[6] Mr. Burbank also refers to an exception to the general rule that courts do not review a consular official's decision to deny a visa to a foreigner.  ECF No. 15 at 14 (citing *Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008)).  "[W]hen a U.S. citizen's constitutional rights are alleged to have been violated by the denial of a visa to a foreigner, [courts] undertake a highly constrained review solely to determine whether the consular official acted on the basis of a facially legitimate and bona fide reason."  *Bustamante*, 531 F.3d at 1060.  Assuming that this rule and the exception apply to the USCIS's denial of an I-130 petition on the basis of the Adam Walsh Act, the Court finds that protecting a beneficiary from the risk that Congress perceived in allowing convicted sex offenders to apply for family-based visas is sufficient to satisfy the constrained review discussed in *Bustamante*.

whether Congress has directly spoken to the precise question at issue.  If the intent

of Congress is clear, that is the end of the matter; for the court, as well as the

agency, must give effect to the unambiguously expressed intent of Congress."

*Chevron*, 467 U.S. at 842-43.  Second, "if the statute is silent or ambiguous with

respect to the specific issue, the question for the court is whether the agency's

answer is based on a permissible construction of the statute."  *Id.* at 843.

Even assuming that the Adam Walsh Act is ambiguous in this regard, the

Court finds that the USCIS's interpretation of the law is permissible.  In a

memorandum written by Acting Associate Director Donald Neufeld ("Neufeld

Memo"), the USCIS acknowledged that the Adam Walsh Act prohibits a person

convicted of a specified offense from filing a family-based petition, but the memo

advised that "[a]s a practical matter . . . we need to accept the petition and conduct

the necessary analysis to determine whether the [Adam Walsh Act] provisions

apply."  ECF No. 9, Ex. 2 at 4.  This is a much more reasonable interpretation of

the Adam Walsh Act than Mr. Burbank's technical reading of the law, which only

would preclude petitioners from applying for an I-130 visa and would hamstring

the USCIS from enforcing the provision after the agency had an opportunity to

review a filed petition.

Similarly, the Court finds that the USCIS permissibly interpreted the Adam

Walsh Act to allow the agency to apply the heightened standard of "beyond any

reasonable doubt." Congress denominated no specific standard of proof, but the Adam Walsh Act's instruction that a family-based visa petition should be allowed in such circumstances only where the citizen poses no-risk, and the delegation of that judgment to the "sole and unreviewable discretion" of agencies, supports the USCIS's understanding that the factual showing should be high. *See* 8 U.S.C. § 1154(a)(1)(A)(viii); *see also Matter of Aceijas-Quiroz*, 26 I. & N. Dec. 294, 300 (2014) (interpreting "Congress' allocation of responsibility for the 'no risk' determination to the DHS as an allocation of sole authority . . . to construct the legal framework within which such discretionary determinations are to be made, including the appropriate standard of proof").

Accordingly, the Court finds that Mr. Burbank failed to raise a facially plausible claim that Defendants acted ultra vires of the authority granted by the Adam Walsh Act.

### 5.    *Arbitrary and Capricious Conduct in Violation of the APA*

In his fifth cause of action, Mr. Burbank asserts that the USCIS violated the APA by presuming that I-130 petitions filed by persons with disqualifying convictions should be denied. ECF No. 9 at 23-25.

Mr. Burbank refers to memoranda from the USCIS in support of his contention that the agency applies a presumption of denial. The Neufeld Memo provides that "given the nature and severity of many of the underlying offenses and

1    the intent of the [Adam Walsh Act], approval recommendations should be rare."

2    ECF No. 9, Ex. 2 at 2.  More directly, the letter denying Mr. Burbank's I-130

3    petition explains that "[a] petitioner who has been convicted of a 'specified offense

4    against a minor' is presumed to be ineligible to petition for family-based benefits."

5    ECF No. 9, Ex. 3 at 3.

6        Defendants deny that the memoranda attached to the Amended Complaint

7    evidence such a presumption of denial.  ECF No. 14 at 12-13.  However, the

8    Neufeld Memo's statement that approval recommendations "should be rare" and

9    the USCIS's explanation that such a presumption actually was applied to Mr.

10   Burbank's petition provide sufficient support of such a presumption at this stage of

11   litigation.

12       Nevertheless, the Court finds that a presumption of denial is a permissible

13   interpretation of the Adam Walsh Act.  *See Chevron*, 467 U.S. at 843.  Subsections

14   1154(a)(1)(A)(i) and (viii) together provide that a citizen "who has been convicted

15   of a specified offense against a minor" is excluded from petitioning for a family-

16   based visa "*unless* the Secretary of Homeland Security, in the Secretary's sole and

17   unreviewable discretion, determines that the citizen poses no risk to the alien . . . ."

18   *See* 8 U.S.C. § 1154(a)(1)(A)(viii) (emphasis added).  Although the Adam Walsh

19   Act does not expressly create a presumption of denial, it is permissible to construe

20   from this language that the default rule is to deny petitions from a citizen who has

1    been convicted of a specified offense and that deviations from that rule should be

2    rare.

3        6.    *APA Notice and Comment Requirements*

4        Mr. Burbank additionally alleges that Defendants' implementation of the

5    Adam Walsh Act constituted administrative rulemaking and that the agency did not

6    engage in the required notice and comment procedures.  ECF No. 9 at 25-28.

7    Specifically, Mr. Burbank claims that the USCIS created new rules by applying the

8    "beyond any reasonable doubt" standard, expanding the no-risk determination to

9    include any risk "to the safety or well-being" of the beneficiary, and presuming

10   that a petition filed by a citizen with a specified conviction should be denied.

11       The APA's rulemaking procedures do not apply "to interpretative rules,

12   general statements of policy, or rules of agency organization, procedure, or

13   practice . . . ."  5 U.S.C. § 553(b)(3)(A).  An agency is prohibited, however, from

14   creating a new regulation "'under the guise of interpreting a regulation . . . .'"

15   *Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010) (quoting *Christensen v.*

16   *Harris Cnty.*, 529 U.S. 576, 588 (2000)).  The Ninth Circuit has distinguished

17   interpretive rules from substantive rules:

18       "Generally, agencies issue interpretive rules to clarify or explain
         existing law or regulations so as to advise the public of the agency's
19       construction of the rules it administers."  However, "[i]f a rule is
         inconsistent with or amends an existing legislative rule, then it cannot
20       be interpretive."  This is because a rule that is inconsistent with a rule
         promulgated subject to notice and comment would impose new rights

ORDER GRANTING MOTION TO DISMISS ~ 23

or obligations and would require compliance with the § 553 procedures.

*Mora-Meraz v. Thomas*, 601 F.3d 933, 940 (9th Cir. 2010) (internal citations omitted) (quoting *Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001)).

Here, as discussed above, the heightened standard of proof and presumption of denial are consistent with the Adam Walsh Act's explanation of the no-risk determination. These interpretations clarify the USCIS's application of its broad discretion rather than make new law. *See Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 886 (9th Cir. 1992), *as amended* (June 2, 1992) ("Because [interpretive rules] generally clarify the application of a law in a specific situation, they are used more for discretionary fine-tuning than for general law making."). The USCIS's announcements regarding those issues are valid interpretations of the Adam Walsh Act rather than substantive rules that would implicate the APA's notice and comment procedures.

Similarly, the USCIS's consideration of the risk "to the safety or well-being" of a beneficiary is consistent with Congress's instruction to the agency to determine whether a citizen posed no-risk to the alien. This definition did not amend the statute but instead explained the agency's interpretation of it.

In sum, the Court concludes that it has subject matter jurisdiction to consider Mr. Burbank's Amended Complaint. However, the Amended Complaint fails to show that Mr. Burbank has a plausible claim for relief.

Leave to amend a complaint should be granted freely when justice so requires. Fed. R. Civ. P. 15(a). However, leave need not be granted where it would be futile to allow amendment of the complaint. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)). Moreover, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.*

Here, Mr. Burbank already has amended his complaint and, for the reasons discussed above, the Court finds that it would be futile to allow him to amend the complaint again.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss, **ECF No. 14**, is **GRANTED**.

2. The Amended Complaint, **ECF No. 9**, is **DISMISSED WITH PREJUDICE** and without attorney fees to any party.

The District Court Clerk is directed to enter this Order, provide copies to counsel, and **CLOSE** this case.

**DATED** this 29th day of July 2015.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING MOTION TO DISMISS ~ 25